UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SCOTT SCHRADER,

                                        Plaintiff,

vs.                                                          **COMPLAINT**

MAYBROOK ENGINE COMPANY NO. 1, INC.
MAYBROOK FIRE DISTRICT, FIRE COMMISSIONERS
MATT THORP, ERIC SCHOLZ and GARY ANDERSON,

                                        Defendants.
------------------------------------------------------------------x

        By and through his counsel, Michael H. Sussman, Esq., plaintiff alleges

as follows against defendants:

## I. **PARTIES**

        1. Plaintiff Scott Schrader is an adult who resides in the County of

Orange, State of New York, within this judicial district.

        2. Defendant Maybrook Fire District is a state actor which operates in

the County of Orange, State of New York, within this judicial district.

        3. Defendants Matt Thorp and Gary Anderson are Commissioners of the

Maybrook Fire District and Eric Scholz is a former Commissioner who now

serves as President of the engine company; all reside in the County of Orange,

State of New York, within this judicial district.

## II. **JURISDICTION**

        4. As plaintiff alleges that defendants violated rights protected by the

equal protection clause of Fourteenth Amendment to the United States

Constitution by and through their retaliation arising from his opposition to

racial discrimination and his participation in federal litigation commenced to

1

oppose and eradicate such racial discrimination from defendant district and company, this Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. sections 1331, 1343 (a) (3) &(4) and 42 U.S.C. secs. 1983 and 1988.

III. **FACTUAL AVERMENTS**

5. During the last half of calendar year 2020 and through the settlement of that litigation in 2021, plaintiff supported and participated in civil litigation initiated by an African American member of the defendant Fire District and the defendant engine company.

6. In late 2020, counsel for this African American man identified plaintiff as a witness who would attest to the racist comments and behavior directed toward that plaintiff by Teddy Ginquitti, then the Chief of defendant fire district.

7. In late 2020/early 2021, the Fire District decided to charge Chief Ginquitti and hired counsel, Raymond Raiche, Esq. of Beacon, New York to prosecute the case for Ginquitti's removal.

8. In the process of preparing his case against Mr. Ginquitti, Mr. Raiche met with plaintiff Schrader and an employee of Sussman & Associates, which represented the African American fire fighter [Michael Moshier] and plaintiff, a witness associated with him and supportive of his claims of racial discrimination in and by these municipal defendants.

9. In late 2020, after the members of the fire district came to understand that plaintiff was cooperating with the African American fire fighter in and opposing racially discriminatory conduct he had witnessed at the fire house,

2

they ostracized him, called him a rat and made it impossible for him to continue to participate in the affairs and activities of the defendants district and company.

10.  On January 25, 2021, plaintiff wrote the fire district's lawyer, explaining his role as a witness for the African American fire fighter, the harassment to which he was being subjected and demanded that the members desist from their harassment of him.

11. In addition, while a Commissioner of defendant fire company between 2020-22, defendant Thorp also served as DPW Superintendent for the Village of Maybrook.

12.  Apprised of plaintiff's participation as a witness for the African American fire fighter, defendant Thorp ordered and orchestrated the destruction of plaintiff's driveway and vegetation which he and his family cultivated in the front of their home.

13.  In retaliation for plaintiff's support of and participation in the African American fire fighter's federal anti-discrimination lawsuit, Defendant Thorp thereafter dispatched subordinates to damage plaintiff's property.

14.  As a result of this malicious conduct, though he was then an active member in good standing and wanted to continue to so contribute to his community, plaintiff Schrader desisted from engaging in activities at the defendant district and company as doing so was too dangerous and stressful.

15.  Plaintiff continued to desist from participating in the affairs of the defendant district and department until the late spring 2022.

16. By then, former Chief Ginquitti was no longer associated with the fire district and the lawsuit initiated by the African American fire fighter who plaintiff Schrader had supported had settled.

17. On June 19, 2022, defendant Anderson, a close friend of Ginquitti's, asked plaintiff if he would come back to the firehouse.

18. Somewhat baffled, plaintiff advised that he would consider it and explained that his pager no longer worked.

19. The following day, unannounced, defendant Anderson appeared at plaintiff's home and presented him with a new pager.

20. The following day, defendant Anderson again dropped by plaintiff's home, mentioned a physical being provided for Fire District members, and asked plaintiff to stop by the fire house to see if his gear was all good and to receive a new key fob to enter the fire station.

21. That night [6/21/22], without incident, plaintiff attended a drill at the fire station.

22. On June 23, 2022, defendant Anderson again visited plaintiff, this time bringing up Mr. Ginquitti and pretending not to know his friend's name.

23. Plaintiff responded negatively to the mention of Mr. Ginquitti's name.

24. Two days later, defendant Anderson sent plaintiff a photograph of Ginquitti via text and plaintiff did not respond.

25.   Starting in late June 2022, plaintiff again became very active as a volunteer firefighter, responding to approximately 90% of all calls and emerging as one of the company's top three responders.

26.   In late August or early September 2022, defendant Anderson repeatedly asked plaintiff to send a text message to a third party urging Ginquitti's return to the fire district.

27.   Recounting Ginquitti's record, plaintiff expressed opposition to this idea.

28.   During the month of September 2022, defendant Anderson repeatedly denied that Ginquitti had ever made racist comments to Moshier, claimed that if plaintiff would call him the "n" word, he could get a lot of money which they could then split, demanded to know how much money Moshier received from the defendant district, questioned why Mosier continued to come around the fire company, inquiring whether he wanted more money, and constantly told plaintiff that defendant Thorp hated him because he was a rat and was waiting for a reason to kick plaintiff out of the district.

29.   In late September/early October 2022, plaintiff complained to the Chief Protsko about Anderson's harassing conduct toward him and sought a letter in good standing from the district so he could transfer to another fire district.

30.   Plaintiff made this request because it was untenable for him to remain in the district and company in light of Commissioner Anderson's incessant reference to the hatred others there felt toward him because of his

participation as a witness from the African American firefighter referenced above.

31.  In this context, in early October 2022, plaintiff also asked Car 1, defendant company Chief Eddie Protsko, for a complaint form and requested to see his own file.

32.  In response, on October 4, 2022, Chief Protsko advised plaintiff that he was working on getting him a letter of good standing.

33.  On October 5, 2022, Chief Protsko advised plaintiff that his papers were in an envelope at the fire house and that he could retrieve this.

34.  Plaintiff went to the fire station that day only to find Anderson and two others there waiting for him.

35.  No letter of good standing was presented.

36.  Instead, Chief Protsko told plaintiff he would not get a letter of good standing until he resigned.

37.  Plaintiff challenged this and stated that there was no such requirement in the company or district by-laws.

38.  Defendant Anderson told plaintiff that he was always causing problems like he did for Teddy [Ginquitti].

39.  Plaintiff left the conversation and began walking toward his truck.

40.  Defendant Anderson began following plaintiff to his truck calling him a rat.

41.  To avoid further contact and confrontation, plaintiff began walking the less than one-quarter mile to his home.

42. Defendant Anderson then stated, "We're in the street now, what are you going to do about it."

43. Plaintiff told Anderson to leave him alone.

44. Defendant Anderson replied, "Too bad Teddy is not here to see this."

45. As defendant Anderson continued to approach, plaintiff pushed him away and told him to stay away from him.

46. Defendant Anderson yelled, "we got this mother fucker.  I got him to do it.  That's what I wanted.  He put his hands on me.  He punched me. I'm calling the cops. He is out of here."

47. Plaintiff returned to his truck and drove away.

48. Within an hour, Chief Protsko called plaintiff and told him he was suspended from the company.

49. Said suspension was unlawful and followed no standard procedures.

50. On October 10, 2022, the district's executive board met and by letter dated October 11, 2022, invited plaintiff to meet with them to discuss the events of October 5.

51. During this meeting, engine company and former district Commissioner Scholz referred to plaintiff as a "mother fucker" and stated that he had been waiting all his life to exclude him from the district.

52. Within the five business days he was provided to respond to the district's invitation to meet, plaintiff responded and agreed to this meeting.

53. However, as of this date, the district Board has not convened a meeting or provided plaintiff of notice of any meeting.

54.  On account of the harassment to which he has been subjected, plaintiff has again been forced to desist from firemanic activities, something he takes great pride in doing to serve his community.

55.  On account of the actions and threats made by defendants Thorp, Scholz and Anderson, a majority of the Commissioners of the Fire District and state actors, plaintiff has suffered emotional distress, anxiety, and humiliation.

## AS AND FOR HIS CAUSES OF ACTION

56.  Plaintiff incorporates paras. 1-55 as if fully restated herein.

57.  By creating a hostile work environment in retaliation for his support of an African American's non-frivolous racial discrimination lawsuit, each defendant violated the equal protection clause of the Fourteenth Amendment to the United States Constitution as made actionable by 42 U.S.C. section 1983.

58.  By suspending him from his service as a fire fighter because of his protected activity, defendant company violated the equal protection clause of the Fourteenth Amendment to the United States Constitution as made actionable by 42 U.S.C. section 1983.

59.  By failing to comply with its by-laws and effectively excluding plaintiff from firemanic duties, defendant district violated the equal protection clause of the Fourteenth Amendment to the United States Constitution as made actionable by 42 U.S.C. section 1983.

60.  By intentionally damaging or causing subordinates to intentionally damage plaintiff's property under color of state law and in retaliation for his protected activity, defendant Thorp violated the equal protection clause of the

Fourteenth Amendment to the United States Constitution as made actionable by 42 U.S.C. section 1983.

### **AS AND FOR HIS PRAYER FOR RELIEF**

**WHEREFORE** Plaintiff prays that this Honorable Court accept jurisdiction over this matter; empanel a jury to hear and decide all issues within its jurisdiction and authority; award to plaintiff compensatory damages against each defendant; award plaintiff punitive damages against the individual defendants, namely Thorp, Scholtz and Anderson; award plaintiff the attorneys' fees and costs arising from the prosecution of this matter; enjoin defendants, their agents, assigns, employees and all others acting in concert with them from retaliating against plaintiff for his constitutionally protected activity and enter any other and further order the interests of law and/or equity require.

Respectfully submitted,

MICHAEL H. SUSSMAN [3497]

SUSSMAN & ASSOCIATES
PO BOX 1005
1 RAILROAD AVENUE, STE. 6
GOSHEN, NY 10924
(845)-294-3991
SUSSMAN1@SUSSMAN.LAW

Counsel for Plaintiff